# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

—————————————

Nº 11-CR-639 (JFB)

—————————————

### UNITED STATES OF AMERICA,

versus

### ADAM VALASQUEZ,

Defendant.

—————————————

**MEMORANDUM AND ORDER**
October 27, 2014

—————————————

JOSEPH F. BIANCO, District Judge:

On May 1, 2014, a jury convicted defendant Adam Valasquez ("Valasquez" or "defendant") of five crimes related to defendant's participation in a conspiracy to rob drug traffickers and business owners in New York City and Long Island.[1] Now pending before the Court is defendant's motion for a judgment of acquittal as to Count Eight—conspiracy to commit promotion money laundering, 18 U.S.C. § 1956(h). In essence, defendant maintains that the government failed to introduce sufficient evidence of an intent to promote the carrying on of Hobbs Act robberies and drug distribution. The government contended at trial, and argues now, that such intent could be inferred from evidence that the conspiracy involved stealing drugs, selling those drugs for money, and distributing the cash to coconspirators. For the reasons set forth below, after careful consideration of the parties' written submissions and the trial record, the Court denies the motion for a judgment of acquittal.

## I. BACKGROUND

### A. Evidence Introduced at Trial

At trial, the government introduced evidence of defendant's participation in a conspiracy to rob drug dealers and business owners in New York City, Long Island, and New Jersey. Timothy Glass ("Glass") testified that he, defendant, and others committed the following crimes in 2008 and

---

[1] As set forth *infra*, the jury returned a verdict of guilty with respect to the following counts charged in the superseding indictment: (1) Hobbs Act Robbery Conspiracy, 18 U.S.C. § 1951(a) (Count One); (2) Hobbs Act Robbery, 18 U.S.C. § 1951(a) (Count Three); (3) Brandishing of a Firearm During a Crime of Violence, 18 U.S.C. § 924(c)(1)(A)(ii) (Count Four); (4) Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§ 841(a)(1), 846 (Count

Seven); and (5) Conspiracy to Launder Money, 18 U.S.C. § 1956(h) (Count Eight). The jury acquitted defendant on the remaining three counts charged in the superseding indictment, which were (1) Interstate Transportation of Stolen Property, 18 U.S.C. § 2314 (Count Two); (2) Hobbs Act Robbery (Count Five); and (3) Using or Carrying a Firearm During a Crime of Violence (Count Six).

2009: theft of clothing from a warehouse in New Jersey in late 2008 (*see* Trial Transcript ("Tr.") 423–42); armed robbery of marijuana dealer Christian Olic ("Olic") at 152nd Street in Queens, New York in January 2009 (*see id.* at 442–62); armed robbery of a medical office on 188th Street in Queens, New York at the end of January 2009 (*see id.* at 464–73); theft of power tools and a pickup truck in Queens in February 2009 (*see id.* at 473–76); armed burglary of an apartment in Hoboken, New Jersey sometime in 2009 (*see id.* at 476–80); and armed robbery of the Glen Oaks Bar in Queens, New York in March 2009 (*see id.* at 480–88). Martin Lovly ("Lovly"), also a participant in the 152nd Street robbery, corroborated Glass's testimony that defendant was involved in that robbery. (*See id.* at 231–43.) Athanasios Michaelides ("Michaelides"), another coconspirator, testified that he observed defendant with Glass shortly after the 152nd Street robbery (*see id.* at 966–67), and that he saw defendant unloading the truck full of stolen clothing when Glass and his crew returned to Queens after breaking into the New Jersey warehouse (*see id.* at 971–72). Coconspirator Kermit Odums ("Odums") also testified that he, defendant, and others committed an additional armed robbery of individuals at 99th Street in Queens in November 2009 (*see id.* at 853–86), and that he, defendant, and others participated in the burglary of an apartment in Brooklyn later that day (*see id.* at 886–92).

The jury also heard evidence concerning the division of the proceeds of these crimes. Glass testified that his crew, including defendant and Lovly, stole approximately two pounds of marijuana from Olic at the 152nd Street robbery. (*See id.* at 461–62.) Glass sold the marijuana to Michaelides for approximately $4000, and then Glass paid each participant in the 152nd Street robbery, including defendant, a portion of that money. (*See id.* at 462.) Glass did not pay the coconspirators evenly; Lovly testified that he received a greater share—about $1200—than defendant. (*See id.* at 367–77.) Glass also testified that, following his theft of power tools and a pickup truck in Queens in February 2009, he sold the power tools for cash, and then divided the cash among his crew (including defendant). (*See id.* at 473–76.)

### B. Procedural Background

Following the presentation of the government's case-in-chief, defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). (*See id.* at 1059.) The Court denied the motion as to Counts One through Seven, stating that "there is no question that there is sufficient proof with respect to each and every element of these, counts one through seven." (*Id.* at 1060.) Pursuant to Rule 29(b), the Court reserved judgment as to Count Eight, the money laundering conspiracy count. (*Id.* at 1059.)

The Court submitted all eight counts of the superseding indictment to the jury. On May 1, 2014, the jury returned a verdict of guilty as to Count One (Hobbs Act robbery conspiracy from April 2008 through April 2010), Count Three (robbery of Olic at 152nd Street in Queens), Count Four (brandishing a firearm during the 152nd Street robbery), Count Seven (conspiracy to distribute marijuana), and Count Eight (conspiracy to commit promotion money laundering). The jury acquitted defendant as to Count Two (the theft of clothing from the New Jersey warehouse), Count Five (the robbery of the medical office in Queens), and Count Six (the firearm charge premised upon Count Five).

Defendant renewed his motion for a judgment of acquittal as to Count Eight on June 9, 2014. The government submitted a letter brief in opposition to the motion on July 11, 2014. This matter is fully submitted, and

the Court has fully considered the submissions of the parties and all evidence introduced at trial.

## II. STANDARD OF REVIEW

"Motions under Rule 29(c) are governed by the same standard as motions under Rule 29(a)." *United States v. Martinez*, 978 F. Supp. 2d 177, 185 (E.D.N.Y. 2013). Pursuant to Rule 29(a), a district court shall enter a judgment of acquittal as to "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29(c) permits a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c).

"'A defendant bears a heavy burden in seeking to overturn a conviction on grounds that the evidence was insufficient.'" *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (quoting *United States v. Cruz*, 363 F.3d 187, 197 (2d Cir. 2004)); *see, e.g.*, *United States v. Pipola*, 83 F.3d 556, 564 (2d Cir. 1996) (noting "heavy burden" in challenging sufficiency of evidence); *United States v. Tillem*, 906 F.2d 814, 821 (2d Cir. 1990) (stating that defendants challenging the sufficiency of evidence "rarely carry the day"). This is because the standard under Rule 29, as articulated by the United States Supreme Court, is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see, e.g.*, *Lorenzo*, 534 F.3d at 159; *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008); *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006); *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006). "Put another way, '[a] court may enter a judgment of acquittal only if the evidence

that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Temple*, 447 F.3d at 136 (brackets in original) (quoting *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999)).

It is important to emphasize that, in evaluating the evidence under this standard, "courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003); *see also United States v. Florez*, 447 F.3d 145, 154–55 (2d Cir. 2006) ("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court."); *Guadagna*, 183 F.3d at 130 ("Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." (internal quotation marks and ellipses omitted)). "The traditional deference accorded to a jury's verdict 'is especially important when reviewing a conviction for conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *Jackson*, 335 F.3d at 180 (quoting *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992)).

Viewing the evidence in the light most favorable to the prosecution means "drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Arena*, 180 F.3d 380, 391 (2d Cir. 1999) (internal citation and quotation marks omitted), *overruled on other grounds by*

*Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003); *accord United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000) ("[T]he credibility of witnesses is the province of the jury, and we simply cannot replace the jury's credibility determinations with our own." (internal citation and quotation marks omitted)). In examining the sufficiency of the evidence, the Court also should not analyze pieces of evidence in isolation, but rather must consider the evidence in its totality. *See United States v. Rosenthal*, 9 F.3d 1016, 1024 (2d Cir. 1993); *see also Guadagna*, 183 F.3d at 130 (holding that sufficiency test "must be applied to the totality of the government's case and not to each element, as each fact may gain color from others"). Finally, "[d]irect evidence is not required; '[i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt.'" *Lorenzo*, 534 F.3d at 159 (quoting *United States v. Rodriguez*, 392 F.3d 539, 544 (2d Cir. 2004)); *see also Irving*, 452 F.3d at 117; *Jackson*, 335 F.3d at 180; *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). However, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (internal citation and quotation marks omitted); *accord United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005).

In short, "'[w]here a court concludes after a full analysis of the evidence in connection with a Rule 29 motion that 'either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter.'" *Temple*, 447 F.3d at 137 (quoting *United States v. Autuori,* 212 F.3d 105, 114 (2d Cir. 2000)). On the other hand, "'in passing upon a motion for directed verdict of acquittal, . . . if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted.'" *Id.* (quoting *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972)).

II. DISCUSSION

A. Legal Framework

Defendant was convicted of conspiracy to commit promotion money laundering under 18 U.S.C. § 1956(h), which states that "[a]ny person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." In the instant case, the object of that conspiracy was promotion money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). The promotion money laundering statute itself provides that

> [w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(A)(i). Therefore, to prove a substantive violation of this criminal statute, the government must establish that a defendant (1) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (2) conducted or attempted

to conduct a financial transaction, (3) which in fact involved the proceeds of specified unlawful activity, (4) with the intent to promote the carrying on of specified unlawful activity. *United States v. Hassan*, 578 F.3d 108, 127 (2d Cir. 2008) (citations omitted). To establish a conspiracy to commit promotion money laundering, the government must prove beyond a reasonable doubt that "(1) a conspiracy to commit promotion money laundering was in existence, and (2) that during the conspiracy, the defendant knew that the proceeds used to further [the scheme] had been derived from an illegal activity, and knowingly joined in the conspiracy." *United States v. Alerre*, 430 F.3d 681, 693–94 (4th Cir. 2005); *accord United States v. Diamond*, 378 F.3d 720, 727 (7th Cir. 2004).

Although promotion money laundering may "differ from that which we traditionally associate with the term 'money laundering,' the language Congress used in 18 U.S.C. § 1956(a)(1)(A)(i) shows that it sought to reach conduct that went beyond the concealment of proceeds of criminal activity." *United States v. Skinner*, 946 F.2d 176, 178 (2d Cir. 1991). Indeed, the term "laundering" is "a complete misnomer" for this crime, as it does not require any evidence of concealment. *United States v. Kalust*, 249 F.3d 106, 111 (2d Cir. 2001) (Winter, J., concurring). "The paradigmatic example of this crime is a drug dealer using the proceeds of a drug transaction to purchase additional drugs and consummate future sales." *United States v. Warshak*, 631 F.3d 266, 317 (6th Cir. 2010) (citing *United States v. Torres*, 53 F.3d 1129, 1137 n.6 (10th Cir. 1995)). However, as discussed *infra*, the crime of promotion money laundering—and, by extension, conspiracy to commit promotion money laundering—covers more than the paradigmatic case.

In this case, defendant focuses on the fourth element of promotion money laundering, the promotion element. To satisfy the promotion element, the Second Circuit requires evidence that a transaction "of laundered funds was made with the intent to promote the specified underlying unlawful activity, be it, for example, by promoting continued illegal activity or by being essential to the completion of the scheme." *United States v. Thorn*, 317 F.3d 107, 133 (2d Cir. 2003). The Second Circuit adheres to a broad view of the promotion element; a defendant need not reinvest the transferred proceeds in subsequent unlawful activities in order to promote specified unlawful activity. *See United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994); *see also Skinner*, 946 F.2d at 177–78.

For instance, in *Skinner*, the Second Circuit upheld promotion money laundering convictions based upon the following evidence: one defendant (Blodgett) sent cocaine from Alaska to the other defendant (Skinner) in Vermont; Skinner sold the cocaine to individuals in Vermont; and then Skinner paid Blodgett for the cocaine by using the proceeds of the cocaine sales to purchase money orders, which she sent to Blodgett. *See id.* at 177. On appeal, the defendants claimed insufficient evidence of the promotion element because the financial transactions at issue represented a "simple payment for illegal drugs." *See id.* The Second Circuit conceded that the conduct supporting the promotion element was "de minimis, because the transactions in reality represented only the completion of the sale from Blodgett to Skinner." *Id.* at 179. Indeed, the Second Circuit noted that it was "doubtful . . . whether Skinner needed to make payments by money order to continue her business, because Blodgett returned from Alaska in late August and began selling cocaine directly to Skinner." *Id.* at 180. Thus, the financial transactions at issue could "only

be said to have facilitated additional crimes in the most minimal sense." *Id.* Nonetheless, given "the breadth of the [money laundering] statute," the Second Circuit held that the defendants' conduct reflected an intent to promote the carrying on the sale of cocaine and, therefore, constituted a criminal violation of the promotion money laundering statute. *See id.* at 178–79.[2]

## B. Application

Defendant contends that there was insufficient evidence of a conspiracy to commit promotion money laundering because there was no evidence of an intent to promote the carrying on of robberies and marijuana distribution.[3] According to defendant, "all that happened is that the defendants sold off the proceeds of a robbery *that had already been completed*, divided the cash obtained from such sale, and then used the cash for personal expenses." (Def.'s Letter-Motion, at 2 (emphasis in original).) For the following reasons, the Court disagrees.

As an initial matter, the Court emphasizes that defendant was convicted of *conspiracy*

to commit promotion money laundering, not the substantive crime of promotion money laundering, and that "the prosecution was not required to prove that the defendant[] had committed promotion money laundering in order to convict [him] of conspiring to do so." *Alerre*, 430 F.3d at 694. Accordingly, the Court's inquiry is "limited to whether the trial evidence was sufficient to sustain the defendant['s] conviction[] for conspiracy to commit promotion money laundering." *Id.*

Next, although defendant does not challenge the proceeds element of promotion money laundering, the Court reiterates what it has already explained on the record with respect to that element. (*See* Tr. 1237–38.) Because the evidence in this case showed that the allegedly laundered funds derived from the sale of stolen property, including stolen drugs, the term "'proceeds' is not limited to 'profits.'" *United States v. Quinones*, 635 F.3d 590, 599 (2d Cir. 2011) (holding "that 'proceeds' under 18 U.S.C. § 1956 is not limited to 'profits' at least where, as here, the predicate offense involves the sale of contraband").[4] Therefore, the Court concludes that the proceeds element of the

---

[2] The Second Circuit also held that the district court should have considered at sentencing the fact that the defendants' conduct represented an atypical form of promotion money laundering. *Skinner*, 946 F.2d at 179–80.

[3] There is no dispute that the crimes of robbery and drug distribution qualify as specified unlawful activities. *See* 18 U.S.C. § 1956(c)(7)(B)(i)–(ii) (defining "specific unlawful activity" to include "distribution of a controlled substance (as such term is defined for the purposes of the Controlled Substances Act)" and "robbery").

[4] In *Quinones*, the Second Circuit considered the scope of the Supreme Court's holding in *United States v. Santos*, 553 U.S. 507 (2008), a fractured decision interpreting the term "proceeds" in the context of promotion money laundering, and decided that "Justice Stevens's concurrence determines the scope of the Court's holding." *Quinones*, 635 F.3d at 599. In *Santos*, the Court held that "proceeds" means the profits, not gross receipts, of the specified unlawful

activity, at least when that activity is an illegal lottery operation. *See generally* 553 U.S. at 509–24. However, Justice Stevens wrote separately that the meaning of the term "proceeds" should depend upon the specified unlawful activity charged. *See id.* at 525–26 (Stevens, J., concurring). In particular, relying upon the legislative history of the money laundering statute, Justice Stevens concluded that "Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." *Id.*; *see also id.* at 531 & n.1 (Alito, J., dissenting) (noting that "five Justices agree with the position" that "the term 'proceeds' 'include[s] gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales'" (alteration in original)).

Since *Santos*, Congress has amended the money laundering statute to define "proceeds" to mean "any property derived from or obtained or retained, directly

conspiracy conviction has been satisfied based upon evidence that defendant and his coconspirators agreed to divide the gross receipts of their robberies.

Finally, the Court turns to the promotion element, which is the only element defendant actually contests in the pending motion. Viewing the evidence in the light most favorable to the government, and bearing in mind that even "de minimis" promotion will suffice to support a conviction for money laundering conspiracy, *see Skinner*, 946 F.2d at 179, the Court concludes that a reasonable trier of fact could have found beyond a reasonable doubt that defendant joined a conspiracy that intended to promote Hobbs Act robberies and marijuana distribution by distributing the proceeds of robberies to the coconspirators. Critically, there was sufficient evidence that the defendant participated in an ongoing conspiracy to commit multiples Hobbs Act robberies. Moreover, the evidence concerning the 152nd Street robbery showed that the coconspirators did not merely divide up the stolen goods; instead, Glass converted the goods to cash and then *paid* each conspirator a different amount. In other words, there was evidence that Glass paid his coconspirators like employees of the conspiracy. A reasonable jury could have inferred from these facts that the plan to pay the proceeds of robberies to coconspirators was designed to encourage their participation in future crimes, *i.e.*, to promote the carrying on of Hobbs Act robberies. As Chief Judge Kozinski has argued persuasively,

> [p]ayments of illegally obtained funds to conspirators by definition "promote the carrying on" of the conspiracy, because without them, no

one would have an incentive to participate. They are like salaries offered to employees--payment for services rendered. These payments thus stand in sharp contrast with transactions one step downstream, where happily paid conspirators use funds obtained from shell corporations to satisfy personal obligations.

*United States v. Matranga*, 116 F.3d 487 (Table), 1997 WL 330615, at *10 (9th Cir. 1997) (Kozinski, J., dissenting).

Chief Judge Kozinski's argument and this Court's conclusion find support in the decisions of numerous Courts of Appeals. For instance, in *Alerre*, the Fourth Circuit affirmed a promotion money laundering conspiracy in light of evidence that the conspiracy called for defendants "to acquire funds through . . . illegal activities and then distribute those funds to [coconspirators], as compensation for their efforts." 430 F.3d at 695; *see also United States v. Swinson*, 243 F. App'x 760, 762 (4th Cir. 2007) ("Here, one coconspirator testified that Swinson entered into an agreement to receive packages containing marijuana at this shop, that he was paid with money from the drug profits, and that Swinson knew that this money came from the drug operation. Several witnesses established that payments were made to Swinson so that he would accept the shipments of illegal marijuana at his shop, thereby promoting the illegal activity. Therefore, substantial evidence supports the conspiracy conviction as well as the substantive conviction."). *Alerre* relied on a prior Fourth Circuit decision, *United States v. Bolden*, 325 F.3d 471 (4th Cir. 2003), for the proposition that a promotion money

---

or indirectly, through some form of unlawful activity, including the gross receipts of such activity." *See* 18 U.S.C. § 1956(c)(9). However, because the conduct at issue here occurred before the amendment, the Court

does not rely upon the amendment in this case. *See, e.g., United States v. Sahabir*, 880 F. Supp. 2d 377, 380 n.2 (N.D.N.Y. 2012).

laundering conviction could be "supported by evidence that [the] defendant paid [a] subordinate for [the subordinate's] participation in [an] illegal scheme because such payment compensated subordinate for past illegal activities and encouraged his future participation." 430 F.3d at 695. Similarly, the Sixth Circuit has concluded that payments made to a defendant's employees could support a reasonable finding "that the payments were intended to reward faithful service and encourage future commitment to the criminal endeavor," thereby satisfying the promotion element of money laundering. *See Warshak*, 631 F.3d at 319; *see also id.* at 318 (recognizing that "a number of cases support the proposition that payments to employees may constitute sufficient evidence of an intent to promote an unlawful activity"). The Fifth and Eleventh Circuits have adopted this approach, as well. *See United States v. Valdez*, 726 F.3d 684, 691 (5th Cir. 2013) (affirming money laundering conviction because "a jury could draw the reasonable inference that these employees received payments to encourage their continued participation in the fraudulent scheme, and thus that the payments promoted the ongoing healthcare fraud"); *United States v. Kelley*, 471 F. App'x 840, 845 (11th Cir. 2012) (upholding promotion money laundering conviction because reasonable jury could conclude "that the monthly dividend payments were designed to give the principal players in the steroid distribution scheme an incentive to continue their activities despite the risks inherent in such activity").

Defendant's reliance on *United States v. Jolivet*, 224 F.3d 902 (8th Cir. 2000), is misplaced. In *Jolivet*, the Eighth Circuit reversed the defendant's promotion money laundering convictions because there was no evidence that the defendant and her confederate had "used the proceeds from any one incident to further their future schemes." 224 F.3d at 911. Moreover, the Eighth Circuit found "no logic in the government's suggestion that [a defendant] could promote the carrying on of an already completed crime." 224 F.3d at 909. Here, unlike in *Jolivet*, the government has not suggested that defendant merely conspired to promote the carrying on of an already completed crime. Instead, as noted *supra*, the government has maintained since trial that defendant conspired to promote the carrying on of future crimes, and the evidence supports such a finding.

Accordingly, viewing the evidence in the light most favorable to the government, the Court concludes that a reasonable jury could have found that defendant conspired to promote the carrying on of future Hobbs Act robberies and drug distribution, and ultimately, that he was guilty of the charged money laundering conspiracy.[5] Of course, defendant can argue for a lesser sentence on the basis that his conviction for money laundering conspiracy does not fit the classic definition of money laundering. *Cf. Skinner*, 946 F.2d at 180 (concluding that atypical nature of the money laundering conduct warranted consideration at sentencing).

---

[5] Although the focus of defendant's argument was the promotion element, the Court has reviewed all the elements of the crime and determined that there was sufficient evidence on each and every element for the jury to find that the government had met its burden of proof beyond a reasonable doubt.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion for judgment of acquittal as to Count Eight is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 27, 2014
       Central Islip, NY

\*       \*       \*

The United States is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Burton T. Ryan, Jr. and Charles P. Kelly, Assistant United States Attorneys, 610 Federal Plaza, Central Islip, NY 11722. Defendant is represented by Edward P. Jenks, 332 Willis Avenue, Mineola, NY 11501.